The STATE of Ohio, Appellee,

v.

HUDSON, Appellant.

[Cite as *State v. Hudson* (1993), 86 Ohio App.3d 113.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920092 and C–920094.

Decided Jan. 29, 1993.

114

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Stephen J. Wenke,* Assistant Prosecuting Attorney, for appellee.

*John K. Issenmann,* for appellant.

---

*Per Curiam.*

On September 3, 1991, defendant-appellant, Alvie Lamont Hudson, was indicted on one count of felonious assault and one count of kidnapping, each count carrying a firearm specification. Appellant entered a plea of not guilty. On January 23, 1992, following a jury trial, appellant was found guilty of both counts but found not guilty on both firearm specifications. He was sentenced as appears of record.

In this appeal, appellant asserts two assignments of error. For the reasons that follow, we find the first assignment to be well taken and overrule the second assignment of error.

According to evidence presented by the prosecution at trial, appellant's guilt stemmed from events that occurred sometime after midnight, in the early morning hours of July 16, 1991, when appellant's co-defendant, Maurice Collins, picked up two men, ShaRaunn Hinton and Andre Phillips, allegedly to take them to the home of "Little Dave" Mitchum. Instead, Collins drove the pair to appellant's girlfriend's house, where appellant joined the group.

Collins drove to an alley in Mt. Auburn and parked. Appellant left the group but returned in a few minutes with a gun. Phillips and Hinton were ordered out of the car and their hands were tied with duct tape. Both men broke free of the tape and tried to plead with Collins and appellant that they had nothing to do with a burglary that occurred at Collins's house on July 15, 1991. Hinton testified that appellant struck him in the face with the gun, then picked up a brick and hit him in the head with it. When Hinton was finally able to run away from his assailants, he got into a cab, which he ordered to take him to a police station.

In his first assignment of error, appellant argues that the trial court erred in failing to declare a mistrial as a result of the prosecuting attorney's misconduct. The prosecutor's alleged misconduct occurred during closing arguments as he addressed the jury and stated:

"All right. We're putting a lot of unfair things on you. You've been told by the Court, and you're going to be told more, you can't speculate. You keep

hearing David Mitchum. You hear all these things. They come at you and you start wondering. You can't help it, but look and say, hey, there's more here. There's more here than a simple fist fight between two young men.

"He was right; there are no choir boys involved here whatsoever. I'm not going to stand up here and tell you ShaRaunn is a pillar of the community. I told you in the very beginning what was involved here was basically drug-related.

"Now, upper courts in all their wisdom and ivory towers say I can't appeal to you and tell you that the violence among young people like this is a problem of today. I can't tell you that because I can't appeal to you on that and I won't do it.

"MR. SCHUH: Your Honor, I object.

"MR. CROWE: But facts are facts.

"THE COURT: Well yeah, you can't do it.

"MR. CROWE: I won't do it, Judge.

"THE COURT: But you did. However, we don't live in a vacuum, ladies and gentlemen, and I'm sure Mr. Crowe is not telling you anything you don't know.

"Let's try to stay with the facts on this case."

Besides the objection raised while the prosecutor was making his argument, counsel for the defense moved for a mistrial in a sidebar conference following the trial court's instructions to the jury and before the jury retired to deliberate. The trial court denied the mistrial, explaining that the statements made by the prosecutor were "really within the common knowledge of any citizen * * *."

▉ Under Ohio law, to determine whether prosecutorial misconduct may serve as the basis for reversing a defendant's conviction, a two-part test must be employed: (1) the first part of the inquiry concerns whether the prosecutor's comments were improper; and (2) the second entails an examination, on a case-by-case basis, of whether any improprieties prejudicially affected substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293; *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883; see, also, *State v. Spencer* (May 15, 1991), Hamilton App. No. C–900008, unreported, 1991 WL 81661. It is often said that considerable latitude should be permitted in closing argument, *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768; *State v. Liberatore* (1982), 69 Ohio St.2d 583, 23 O.O.3d 489, 433 N.E.2d 561, but it remains clear that the law does not countenance, within that latitude, insinuations and assertions calculated to mislead, or allusions to matters not supported by admissible evidence. *State v. Lott, supra,* 51 Ohio St.3d at 166, 555 N.E.2d at 300. Similarly forbidden are calls for a jury to convict not on the

facts and the law, but in response to public demand. *State v. Hicks* (1989), 43 Ohio St.3d 72, 538 N.E.2d 1030.

■ In the case *sub judice*, we are convinced that the prosecutor's closing argument was indelibly stained by remarks that were improper and calculated to mislead in several respects: (1) instead of maintaining the proper focus on whether admissible evidence in the record demonstrated beyond a reasonable doubt all the elements of the charged offenses, the argument encouraged the jury to convict Hudson improperly either (a) on the basis of his bad character ("there are no choir boys involved here") and associations with drug dealers ("what was involved here was basically drug-related"), or (b) to serve public demand by ridding the community of one manifestation of the problem posed by drug trafficking ("violence among young people like this is a problem of today"); and (2) the argument further encouraged the jury to ignore the law by insinuating that the law unfairly hindered the search for truth in the fact-finding process ("We're putting a lot of unfair things on you"), that the law was contrived, unrealistic and sterilely academic ("upper courts in all their wisdom and ivory towers say I can't appeal to you * * * [b]ut facts are facts"), and that, therefore, practical considerations such as bad character and public need should be given precedence over the proper application of the law to the admissible evidence presented at trial. These improprieties were only compounded when the trial judge, instead of making a meaningful effort to cure the prejudice by the issuance of a firm and unambiguous cautionary instruction about the jury's appropriate role, effectively endorsed the errors by saying to the panel, "[The prosecutor] is not telling you anything you don't know."

In our judgment, the patently erroneous remarks of the prosecutor, as they stood abetted rather than cured in the eyes of the jury as a result of the ill-chosen words of the trial judge, adversely affected substantial rights of Hudson because, on this record, it must be said that there is a reasonable possibility that they contributed to his conviction. *State v. Smith, supra.* As we see it, the evidence presented by the prosecution at trial is not so compelling that we can conclude beyond a reasonable doubt that the misconduct was harmless. See Crim.R. 52(A). The first assignment of error is, accordingly, well taken.

■ In his second assignment of error, appellant argues that the trial court erred in failing to charge the jury on the lesser offenses of abduction and aggravated assault. In reviewing the relevant statutory definitions of "kidnapping," under R.C. 2905.01, and "abduction," under R.C. 2905.02, we note that kidnapping, as it pertains to this case, includes the element of deception. The statute begins, "No person, by * * * deception, * * * shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes: * * *." Abduction does not include the element of deception.

Phillips testified that, when Collins picked him up, he was led to believe that they were going to the house of the man who Collins believed had burglarized his house. Hinton testified that Collins asked him to accompany him to Little Dave Mitchum's house. Instead, of course, Collins drove the two to meet up with appellant. Appellant has presented no evidence to establish anything other than the fact that the victims were deceived into accompanying Collins and appellant to the place where the incident occurred. The victims did not know they were being kidnapped until they arrived at the alley. Consequently, we hold that, because the evidence does not reasonably permit a finding against the prosecution on the element of deception, the trial court did not err in failing to charge the jury on abduction.

■ Turning now to a comparison of felonious assault, under R.C. 2903.11, and aggravated assault, under R.C. 2903.12, we note that for aggravated assault, the statute requires that the offense occur while the offender is under extreme emotional stress brought on by severe and adequate provocation. Felonious assault has no such requirement. In his brief, appellant argues that "[i]n view of the fact that a fight was taking place, it would seem logical that the evidence would support an Aggravated Assault violation." The only evidence appellant gives to support such a contention is that "[t]he testimony throughout the case did indicate the Defendant–Appellant was upset about being burglarized and thought the victim, Mr. Hinton, had knowledge of that event."

The fact that appellant was "upset" falls short of the statutory requirement that an offender be "under the influence of sudden passion or in a sudden fit of rage." R.C. 2903.12. Without more, we must conclude that the trial court did not err in failing to charge the jury on the lesser offense of aggravated assault. The second assignment of error is overruled.

The judgment of the trial court is reversed on the strength of appellant's first assignment of error, and this cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., and UTZ, J., concur.

HILDEBRANDT, J., dissents in part.

HILDEBRANDT, Judge, dissenting.

After careful consideration, I feel I must dissent from the panel's determination on the first assignment of error. Under the two-step test of *State v. Lott, supra,* it is my judgment that, while the statements of the prosecutor may have been improper, nevertheless, the substantial rights of appellant were not prejudi-

cially affected. The record demonstrates that, absent the prosecutor's remarks, the jury would still have found appellant guilty beyond a reasonable doubt. I must conclude that the statements were not so egregious as to invalidate an otherwise fully justifiable conviction. While I concur in the resolution of the second assignment of error, I would overrule the first assignment of error and, therefore, I respectfully dissent.