**The STATE of Ohio, Appellee,**

**v.**

**HART, Appellant.**

[Cite as *State v. Hart* (1994), 94 Ohio App.3d 665.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920667.

Decided April 27, 1994.

666

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christian J. Schaefer,* Assistant Prosecuting Attorney, for appellee.

*Richard L. Bell,* for appellant.

*Per Curiam.*

On December 6, 1991, defendant-appellant, Earl H. Hart, Jr., was indicted on one count of aggravated murder with a death-penalty specification for purposely killing Anna T. Steffin while committing or attempting to commit the offense of aggravated burglary. Aggravated burglary was charged in the second count of the indictment. Hart entered a plea of not guilty.

A jury trial began on May 7, 1992. During the trial, the state dismissed the death specification. Fourteen days later, it was entered of record that the jury was hopelessly deadlocked and the jury was discharged.

A second trial began on August 10, 1992. This trial did not involve the death penalty, nor does this appeal. Four days later the jury returned a verdict of guilty on both counts. Hart received a life sentence, with parole eligibility after twenty years, for count one, and an indeterminate term of incarceration with ten years' actual imprisonment on count two. The sentences were to run consecutively.

Hart brought this timely appeal asserting seven assignments of error. For the reasons that follow, the judgment of the trial court is reversed and this case is remanded for a new trial.

On August 28, 1991, alerted by a concerned mail carrier, Cincinnati police officers entered the home of ninety-year-old Anna T. Steffin. They discovered her badly decomposed and fly-infested body in her bed. Steffin was lying on her back, her hands tied to the bedposts, a gag of paper towels in her mouth, and her legs spread apart. Her pajama top was open. Her pants were pulled down to just above her knees. Green bottle flies infested the house. The corpse was covered with pupal casings, fly eggs, and live flies.

The bedroom had been ransacked. Closets and dresser drawers were open. A purse was lying on the floor. Further investigation revealed a torn or cut screen window in the kitchen, the probable point of entry for the perpetrator. A greasy smudge, believed to be an unidentifiable fingerprint, was found near the window. Two readable prints were found on the telephone and on the interior of the kitchen storm door. The fingerprints were later found to be those of Earl Hart.

In addition to the Cincinnati police division, Dr. Robert Pfalzgraf, a deputy coroner of Hamilton County, conducted an investigation. The decomposed state of the body hampered his autopsy, but Pfalzgraf found that Steffin's hyoid bone and thyroid cartilage, both located in her neck, were crushed. She died of mechanical asphyxiation.

The investigation progressed little until November 1991, when Randall Kennebreuw, then incarcerated in the Hamilton County Justice Center, told police that

he had seen the perpetrator of the homicide, Earl Hart, in the Justice Center. Kennebreuw related that on August 12, 1991, in exchange for gas money, Hart drove him to an acquaintance's home, located across the street from Anna Steffin's home. Both were seeking odd jobs. Kennebreuw claimed that Hart inquired as to who lived across the street. Kennebreuw told him, but did not wish to go to the Steffin house as he owed Anna Steffin an unpaid debt of several dollars. The two parted ways. Kennebreuw testified that he remained in the area and saw Hart hunched down on the side of the Steffin house. Hart then motioned for Kennebreuw to join him near the kitchen door. Fearful, Kennebreuw left the area.

After initial denials of any involvement, Hart recalled a quite different series of events. He claimed that Kennebreuw entered the Steffin home seeking money. Hart followed him inside. While Kennebreuw and Steffin talked, Hart used the telephone to call his girlfriend. Both men, Hart claimed, left the house together. Hart denied killing Steffin.

Hart now argues, in his sixth assignment of error, that the prosecuting attorneys by their misconduct during trial and closing arguments violated his constitutional rights by depriving him of a fair trial. The state denies misconduct, alleges that any misconduct was an isolated incident in an otherwise properly prosecuted case, argues waiver through lack of defense objections, and maintains that Hart was not prejudiced. Hart correctly argues that the prosecutors erred during closing arguments, and we hold that those errors resulted in a conviction based upon a denial of due process.

Hart complains of seven instances of misconduct: two occurring during the trial, in the cross-examination of a defense witness, and in the cross-examination of Hart himself; and five occurring during the initial and rebuttal closing arguments conducted by the two assistant prosecuting attorneys.

The most serious instance of misconduct arose during the initial closing argument conducted by the initial assistant prosecuting attorney. The prosecutor, employing a chalkboard and previously admitted photographs of the victim's badly decomposed and fly-infested corpse, explained to the jury how the state had proven the essential elements of aggravated murder. He continued:

"Purposely caused the death of Anna T. Steffin. What do we have to show that? What do we have? Think about that. What do we have to show that? We've got her throat crushed. We have the bones in her throat fractured, maimed by his hands around her throat speeding the very life out of her, the very life out of her. As she in her last moments of agony, look at those hands in agony dying, in death clutching those ropes. Can you imagine what this woman went through. Look at that. This woman.

" * * *

"DEFENSE COUNSEL: Your Honor, I would object to asking the jury to imagine what the lady went through. It's not appropriate to have a jury place themselves either into the shoes of the victim or the accused.

"THE COURT: I'll overrule the objection. Go ahead. * * *

"PROSECUTOR: Thank you, Your Honor. I'll submit to you that that even goes beyond the mere pain of having the life crushed out of it.

" * * *

"I submit to you you grab someone around the—it takes awhile to strangle someone. It's not something you can accidentally do. You grab someone and the point that you break the bones in their neck. That shows purpose.

" * * *

"You know, you take someone you hog-tie them like this where they can't get help or anything, particularly older person, you gag them so they can't call for help, and then you abandon them there, how horrible would it be to think that that lady la[y] there for 16 days and starved to death. Died of lack of water, lack of oxygen, lack of food. What a horrible death that would be. What a purpose to cause death that would be.

" * * *

"All right. Those are those facts."

■ The test for whether prosecutorial misconduct may serve as the basis for reversing a conviction is, first, whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596; *State v. Smith* (1984), 14 Ohio St.3d 13, 14–15, 14 OBR 317, 318–320, 470 N.E.2d 883, 885–886; *State v. Hudson* (1993), 86 Ohio App.3d 113, 619 N.E.2d 1190.

■ In our adversarial system, prosecutors are not only permitted but also encouraged to argue fervently for conviction. In displaying that fervor, "the prosecution * * * [has] wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 53 O.O.2d 182, 185, 263 N.E.2d 773, 777. The prosecutor may comment upon the testimony and suggest the conclusions to be drawn from it. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728; *State v. Liberatore* (1982), 69 Ohio St.2d 583, 23 O.O.3d 489, 433 N.E.2d 561.

■ The latitude afforded the prosecutor does not, however, encompass inviting the jury to reach its decision on matters outside the evidence adduced at trial. For while he may strike hard blows, the prosecutor is not at liberty to strike foul ones. *Berger v. United States* (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; *State v. Lott*, 51 Ohio St.3d at 166, 555 N.E.2d at 300. Prosecutors may not allude to matters not supported by admissible evidence. *State v. Lott; State v. Smith*, 14 Ohio St.3d at 14, 14 OBR at 318, 470 N.E.2d at 885; *State v. Liberatore.*

■ Moreover, the standards of conduct for advocates appearing before a tribunal prohibits attorneys from engaging in conduct that taints the fairness of a trial. *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, certiorari denied (1989), 489 U.S. 1042, 109 S.Ct. 1099, 103 L.Ed.2d 241; see, also, *State v. Lorraine* (1993), 66 Ohio St.3d 414, 430, 613 N.E.2d 212, 224 (Wright, J., concurring), certiorari denied (1994), 510 U.S. ——, 114 S.Ct. 715, 126 L.Ed.2d 679; *State v. LaFreniere* (1993), 85 Ohio App.3d 840, 621 N.E.2d 812, motion to certify record overruled (1993), 67 Ohio St.3d 1434, 617 N.E.2d 685.

The Code of Professional Responsibility delineates the following standards. DR 7–102(A)(5) states that a lawyer shall not "[k]nowingly make a false statement of law or fact." DR 7–106(C)(1) provides that an attorney shall not "[s]tate or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence."

In this case, the prosecutor's entreaty to the jury to consider "how horrible would it be to think that that lady la[y] there for 16 days and starved to death" was improper. The prosecutor invited the jury to convict Hart based not upon facts in evidence, but upon the jury's horror at a lingering death.

There was no evidence to substantiate these accusations. Not only did the prosecutor have no reasonable basis to believe so, the prosecutor knew that the victim did not die of starvation or dehydration endured over an extended period. He had personally conducted the direct examination of Dr. Pfalzgraf, in which the deputy coroner testified that the cause of death was mechanical asphyxiation. He had personally conducted the redirect examination of the deputy coroner, in which the following colloquy occurred:

"PROSECUTOR: How long does [asphyxiation] take to take place, whether it be manual or whether it be mechanical or something blocking the breathing passage?

"DR. PFALZGRAF: It only takes anywhere from 15 to 30 seconds to reach unconsciousness and breathing to stop. And then several minutes if no resuscitation occurs would lead to death."

Immediately prior to the tainted remarks, the prosecutor had encouraged the jury to imagine the victim having her throat crushed by Hart's hands "speeding the very life out of her."

Moreover, the prosecutor took the disturbing evidence of the ravages of insect damage inflicted on Steffin's body over an extended period, which was properly admitted at trial for a limited purpose, and inappropriately distorted its significance, thereby providing an even more disturbing image for the jury to contemplate. This image was reinforced by the use of photographs of the victim's corpse throughout the closing argument. For example, immediately after the "sixteen days" remarks, brandishing the photos, the prosecutor asked the jurors to use their "God-given common sense" to conclude how long "it took for this [a healthy robust woman] to become this?"

The time of death was an important fact in issue and was a proper subject of argument. The prosecutor's ploy, however, coming as it did immediately after urging the jury to contemplate a particularly horrid, lingering death which did not occur, "focused [the jurors] not on what the photographs proved, but on the 'feelings' and 'emotions' they evoked." *State v. Keenan* (1993), 66 Ohio St.3d 402, 408, 613 N.E.2d 203, 208.

While a prosecutor may use gruesome photos to illustrate essential elements of the crime to be proven, he may not use them "to appeal to the jurors' emotions." *State v. Thompson* (1987), 33 Ohio St.3d 1, 15, 514 N.E.2d 407, 420. The prosecutor's use of the photos, in this instance, further encouraged the jury to react emotionally and convict on matters not before the court.

■ The relevant inquiry at a criminal trial is not whether the jury is opposed to the acts allegedly committed by the defendant, or whether they are horrified by the results of those acts, but whether the defendant has been shown, beyond a reasonable doubt, to be guilty of doing those acts.

The prosecutor's argument clearly transcended the wide latitude granted counsel in closing argument as to what the evidence has shown and what reasonable inferences may be drawn. It further violated the standards governing courtroom behavior and constituted flagrantly improper conduct.

■ The rebuttal closing argument conducted by the second assistant prosecuting attorney began as follows:

"I was going to start talking to you somewhere else, but there's something I better get off my chest before I explode. They have the nerve to suggest that you cannot infer that there was a purpose to rape this lady."

The prosecutor then reminded the jury of the position Steffin's body was found in, with legs spread and clothing disheveled. A prosecutor may argue and argue

ardently that the evidence does not support the conclusion postulated by defense counsel. A prosecutor may not, however, denigrate the role of defense counsel by injecting his personal frustration with defense tactics, especially when, as here, the prosecutor continues in this fashion:

"And when you think about that you gain valuable insight into their whole method of operation. Crank up the fog machine. Let's try and conjure up a reasonable doubt."

The prosecutor was not entitled to employ rebuttal argument to denigrate the role of defense counsel and to insinuate to the jury that Hart and his counsel, by exercising their right to suggest what conclusions may or may not have been drawn from the evidence found at trial, were seeking to hide the truth. *State v. Keenan*, 66 Ohio St.3d at 405–406, 613 N.E.2d at 207. The prosecutor's remarks in rebuttal also constituted improper conduct.

■ During cross-examination of Hart, the trial court sustained Hart's objection to the same prosecutor's offhand remarks and asides. The prosecutor apologized. We hold that any prejudice to Hart inherent in either the inquiry or the remarks was cured when defense counsel's objection was sustained and the prosecutor apologized. See *State v. Wilson* (1972), 30 Ohio St.2d 199, 59 O.O.2d 220, 283 N.E.2d 632.

The remaining instances of alleged misconduct occurred without objection by Hart's trial counsel. Hart is therefore precluded from predicating error on these alleged incidents of misconduct, except to the extent that they reflect the tenor of the prosecutors' conduct during the whole of the trial. See *State v. Keenan*, 66 Ohio St.3d at 410, 613 N.E.2d at 209.

■ We next must determine if the prosecutors' arguments were so prejudicial that Hart was denied a fair trial. "It is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright* (1986), 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144, 157. The remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 436; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400.

The prosecutors' improper conduct should be assessed within the context of the entire case, and more particularly the entire closing argument, to determine whether it was prejudicial. *State v. Keenan*, 66 Ohio St.3d at 410, 613 N.E.2d at 209; *State v. Slagle* (1992), 65 Ohio St.3d 597, 607, 605 N.E.2d 916, 926, certiorari denied (1993), 510 U.S. ——, 114 S.Ct. 106, 126 L.Ed.2d 72.

The state argues that here, as in *State v. Waddy* (1992), 63 Ohio St.3d 424, 436, 588 N.E.2d 819, 829, certiorari denied (1992), 506 U.S. ——, 113 S.Ct. 338, 121 L.Ed.2d 255, the prosecutors' comments were isolated incidents billed in advance by both the prosecutor and the trial court as argument, and therefore were not prejudicial. Trial courts routinely advise jurors that what the lawyers say is not evidence. That kind of general admonition is not enough to cure all improper remarks a prosecutor makes in closing argument, and was not enough in this case.

Unlike in *Waddy*, the "sixteen days" argument was not a reasonable inference from testimony. In conjunction with the use of gruesome photos, it was a deliberate misstatement of evidence with no other purpose than to inflame the jury. "A prosecutor's duty in closing arguments is to be scrupulous and to avoid all efforts to obtain a conviction by going beyond the evidence before the jury." *United States v. Dorr* (C.A.5, 1981), 636 F.2d 117, 120. "Where opinions are expressed on facts outside the evidence, or are predicated on inferences based upon facts outside the evidence, such opinions have not been countenanced and the judgments in those cases have been reversed upon appeal." *State v. Stephens, supra,* 24 Ohio St.2d at 83, 53 O.O.2d at 185, 263 N.E.2d at 777.

The "fog machine" argument told the jury the defense was resorting to smoke and mirrors instead of its own theory of the case. The remark "they have the nerve to tell you" bordered on impugning defense counsel for what it was their job to do. Standing alone, these comments, made in rebuttal argument, though improper, would probably not have constituted prejudicial error. However, when taken together with the prosecutor's other wholly improper remarks, they had some prejudicial effect.

Moreover, "[w]ithout overwhelming evidence of guilt, we cannot know what the verdict might have been had not the prosecutor clouded the jury's vision with improper tactics." *State v. Keenan,* 66 Ohio St.3d at 411, 613 N.E.2d at 210. This case turned upon the jury's assessment of the credibility of Kennebreuw and Hart. Their versions of what happened in and around Anna Steffin's house were contradictory and mutually exclusive. The remaining evidence presented in this case to show that Hart killed Steffin was scarcely overwhelming. Hart provided an explanation, of whatever credibility or weight, for how his fingerprints came to be found on Steffin's telephone and storm door. Little other direct evidence was introduced in this, the second trial of a case in which the jury failed to come to a verdict the first time.

There is no denying the fact that there is an extra measure of horror about a ninety-year-old woman being murdered in her own house. The facts of this case by themselves conjure up very strong feelings, and would easily roil up even the most objective juror and bestir a strong desire to find the killer and punish him.

Nevertheless, the evidence in this case connecting Hart to the crime is far from compelling. Therefore, to stand before a jury and graphically describe a particularly horrid manner of death that simply did not happen is deplorable. When the evidence of guilt is less than overwhelming, there is more damage in the prosecution trying to bootstrap the lack of evidence with arguments appealing only to passion or prejudice. Cf. *State v. Maurer; State v. DePew* (where the evidence of guilt is overwhelming, prejudicial misconduct is an insufficient basis for reversal and the vacating of convictions and/or sentences). "It is in the close case that the [prosecutor's] conduct is scrutinized more closely." *State v. Draughn* (1992), 76 Ohio App.3d 664, 672, 602 N.E.2d 790, 794.

Based upon our review of the entire record, we conclude that the misconduct prejudicially affected Hart's substantial rights and that the evidence adduced at trial was not so compelling that we can determine beyond a reasonable doubt that the misconduct was harmless. See Crim.R. 52(A). The sixth assignment of error is, therefore, well taken.

Although the resolution of Hart's sixth assignment of error mandates the reversal of his conviction, this court will nonetheless decide those assignments of error raised by Hart that concern matters likely to arise in the retrial of the case. See App.R. 12(A)(1)(c).

█ In his first assignment of error, Hart claims that the state's failure to declare precisely the date of the offenses he was charged with committing was error. A bill of particulars filed before the first trial limited the date of the offenses to the daylight hours of August 12, 1991. Immediately before the second trial was to commence, the trial court permitted the prosecution to reinstate as the dates during which the offenses occurred those dates specified in the original indictment: August 12 through August 28, 1991.

█ The court's ruling was made over Hart's objection. The record does not reflect, however, that Hart requested a continuance. Nor does it reflect that any prepared defense or notice of alibi was thus compromised. This is a case in which the advanced state of decomposition of the victim's corpse may well have prevented the state from providing any more specific date of occurrence than was provided. Absent a showing of prejudice, the exact time and date of an offense are not essential parts of the indictment. *State v. Sellards* (1985), 17 Ohio St.3d 169, 17 OBR 410, 478 N.E.2d 781; *State v. Gingell* (1982), 7 Ohio App.3d 364, 7 OBR 464, 455 N.E.2d 1066. Hart's first assignment of error is overruled.

█ In his second assignment of error, Hart claims that the trial court erred in admitting evidence demonstrating that the victim was raped or feloniously assaulted. He contends that as he was not charged with rape or felonious assault

in the indictment, evidence of those crimes was not admissible to prove the elements of aggravated murder or aggravated burglary. We disagree.

In count two of the indictment Hart was charged with trespassing in Anna Steffin's home with purpose to commit "a theft offense or felony therein." The bill of particulars further specified that Hart entered Steffin's home "for the purpose or purposes of committing any one or all of the following: A theft offense, rape or other sexual felony, felonious assault."

The state argues that the evidence of which Hart complains was admitted to demonstrate a trespass with purpose to commit a theft offense or felony, an element of aggravated burglary. R.C. 2911.11. Allowing evidence of rape and instructing the jury, over objection, that purpose to commit rape or felonious assault could satisfy this element were not error. As Hart was on notice of the state's intention to proceed in this manner, we agree that he was not prejudiced. The second assignment of error is overruled.

Hart next claims that the trial court erred in permitting Dr. Pfalzgraf, a deputy coroner of Hamilton County, to testify outside of his area of expertise by stating that the position of the victim's body and her clothing was consistent with a sexual assault having occurred. The jury, Hart urges, necessarily gave undue weight to the coroner's testimony as it was only a speculation not based upon his opinion given to a medical certainty.

Hart's claim must fail. Although other physical evidence of a sexual assault was lacking, due to the deterioration of the body, it clearly was not error to permit a trained forensic medical expert, charged by law with the investigation of homicides, to testify and give his expert opinion whether a sexual assault had occurred or had been attempted. Evid.R. 702. Such an opinion is no longer inadmissible merely because it is not stated to a reasonable medical probability. *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 616 N.E.2d 909. The jury is free to give the opinion whatever weight it chooses. The third assignment of error is not well taken.

In his fourth assignment of error, Hart contends that the trial court erred in permitting Lisa Stein, an employee of the Cincinnati Zoo, to testify as an expert witness. Stein testified as to the life cycle of the green bottle fly, the type of fly found on the victim's flesh. Hart claims that Stein lacked the educational and professional qualifications necessary for her to testify as an expert in entomology.

This error, alleges Hart, permitted the trier of fact to hear Stein testify as to the time required for the flies to reach the adult stage of their development from eggs deposited on the flesh of the victim. She testified that the green bottle fly requires seven to ten days to reach maturity. From this testimony, the trier of

fact could have concluded that the victim had been dead at least that long prior to the discovery of her body: that is, that the victim was killed on or before August 18, 1991. We find no merit to this contention.

The standard of review regarding the qualifications of an expert is whether the trial court abused its discretion in ruling on such qualifications. Absent a clear showing that the trial court abused that discretion, this court will not reverse a determination with respect to such matters. *State v. Maupin* (1975), 42 Ohio St.2d 473, 479, 71 O.O.2d 485, 488, 330 N.E.2d 708, 713. It is similarly within the discretion of the trial judge to decide whether expert testimony on a matter requiring specialized or technical knowledge is relevant and will assist the jury in determining facts in issue. *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444, syllabus. Furthermore, the expert's credentials go to the weight, not the admissibility, of her testimony.

Evid.R. 702 provides that a witness may be "qualified as an expert by knowledge, skill, experience, training, or education." Stein was employed by the Cincinnati Zoo for five years. Her duties include the raising of green bottle flies as food for predatory insects. She had completed a number of college-level courses in entomology and biology.

Finding no evidence that the trial court abused its discretion in qualifying Stein as an expert witness on the life cycle of the green bottle fly based upon her technical knowledge and practical experience, we overrule Hart's fourth assignment of error.

Hart next asserts, in his fifth assignment of error, that the trial court erred in admitting seven photographs into evidence. Hart claims that the graphic photographic depictions of the decomposed and fly-ravaged body of Steffin were so gruesome, inflammatory, and repetitive as to influence the jury unfairly. Moreover, he claims the photos did not possess separate probative value.

The mere fact that a photograph is gruesome does not render it *per se* inadmissible. *State v. Maurer*, 15 Ohio St.3d at 265, 15 OBR at 401, 473 N.E.2d at 791. The admissibility of potentially prejudicial photographs is determined under a balancing test: the probative value of the evidence must be weighed against the danger of unfair prejudice. Evid.R. 403. This determination is left to the sound discretion of the trial court. *State v. Landrum* (1990), 53 Ohio St.3d 107, 121, 559 N.E.2d 710, 726, certiorari denied (1991), 498 U.S. 1127, 111 S.Ct. 1092, 112 L.Ed.2d 1196.

Our review of the record indicates that the trial court properly admitted a number of photographs of the victim's body. The court also excluded at least six photographs of the corpse. Only four of the photographs assigned as error were

admitted over objection. The photographs that were admitted were relevant and not cumulative. They were used to illustrate the coroner's testimony and the testimony of expert witness Stein, and to show evidence of an attempted theft offense.

As no abuse of the court's discretion has been demonstrated, we hold that the photographs were admitted in accordance with law. Hart's fifth assignment of error is overruled.

Hart's seventh assignment of error, in which he challenges the manifest weight of the evidence adduced to support his convictions for aggravated murder and aggravated burglary, is rendered moot by our ultimate disposition of this case. App.R. 12(A)(1)(c).

Therefore, the judgment of the trial court, finding Hart guilty of aggravated murder and aggravated burglary, is reversed on the strength of the sixth assignment of error, and this case is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., and M.B. BETTMAN, concur.

HILDEBRANDT, J., concurs separately.

HILDEBRANDT, Judge, concurring.

I reluctantly concur in the resolution of this case. I believe that there is ample evidence in the record to support Hart's convictions for aggravated murder and aggravated burglary. The record contains physical and testimonial evidence, properly adduced at trial, from which the jury, in resolving conflicts in the evidence and all reasonable inferences from it, need not have lost its way in finding that Earl Hart entered Anna Steffin's home by stealth or force, bound her hands, gagged her, and asphyxiated her with his hands while committing a theft offense or another felony. See *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652.

However, I cannot say that the prosecutor's contention in closing argument that the victim may have suffered over a prolonged period was supported by credible evidence. See *State v. Stephens; State v. Lott.* Moreover, I cannot say that there is no reasonable possibility that the unsupported remarks about prolonged suffering contributed to Hart's convictions. I must emphasize, though, that were it not for the improper "sixteen days" argument, made after the prosecutor had personally conducted the direct examination of the deputy coroner, I would not reverse the judgment of the trial court.