JOURNAL ENTRY AND OPINION
Defendant Tilden Peacock appeals from his convictions for possession of cocaine in an amount greater than ten but less than twenty-five grams, possession of criminal tools, and preparation of drugs for sale. For the reasons set forth below, we reverse and remand for further proceedings.
On July 19, 1999, defendant was indicted pursuant to a three count indictment. Count One charged defendant with possession of more than ten but less than twenty-five grams of cocaine. Count Two charged defendant with possession of criminal tools (scale and money) and Count Three charged him with preparation of drugs for sale. Defendant pleaded not guilty and the matter proceeded to a jury trial on January 14, 2000.
For its case, the state presented the testimony of Cleveland Police Officers Terence Shoulders, David Gibson and Terrance Smith, and Cleveland Police Scientific Examiner Tracy Kramer.
Officer Shoulders testified that he is assigned to the Fourth District Fresh Start Program, a community policing program which addresses citizen complaints. At the time of trial, he had over fourteen years experience in drug investigations. Officer Shoulders further testified that it is common for people who sell drugs to hide a quantity of drugs nearby while they engage in street sales, so that they can minimize the possible penalty if they are apprehended. It is also common for them to work with partners.
On April 2, 1999, the Fresh Start Program received complaints of extensive drug activity in the area of East 143rd Street and Kinsman Road. Officer Shoulders assigned Officers Gibson and Smith to undercover surveillance on East 143rd Street near Kinsman Road.
Officer Shoulders testified that Gibson and Smith hid beneath the porch of a nearby building in order to continue to monitor the group's activity. They remained in radio contact with Officer Shoulders who was approximately two blocks away.[1]
At approximately 11:15 p.m., Officer Shoulders received information concerning defendant and he responded to the scene with other officers. Defendant was no longer present. Officer Shoulders recovered four separately packaged rocks of suspected crack cocaine and a scale from the doorway of a nearby house which Smith and Gibson had been observing.
On cross-examination, Officer Shoulders admitted that no fingerprints were taken, he did not know who had placed the drugs and scale inside the doorway, and he did not observe defendant's actions prior to the arrest.
Officer Gibson testified that he and his partner, Officer Smith, hid at abandoned property directly across from the area of reported drug activity. He hid beneath a porch and Officer Smith hid in some bushes. They observed a small group of men on a porch across the street. Officer Gibson stated that the men appeared to be handling small objects. Defendant flagged down a car but one of his companions warned him that the police were in the area. Defendant then placed something inside the side screen door of the property and placed another object in his mouth. Defendant approached a second car but then kept walking and no transaction occurred.
Officer Gibson further testified that he had previously seen defendant in the neighborhood and had previously patted him down in response to complaints concerning drug activity. Gibson claimed that defendant had been in the company of other known drug boys who had prior drug cases.
Gibson radioed for backup but defendant left the scene before police arrived. He broadcast a description of defendant's build and clothing and later apprehended defendant sitting on a porch approximately a block away. Officer Gibson was positive that defendant was the man he had observed on April 2, 1999.
On cross-examination, Officer Gibson admitted that not all of the men with defendant were arrested. He also admitted that he does not know what was in defendant's hand and that defendant did not complete any drug transactions during the time of the surveillance.
Officer Terrence Smith testified that he hid behind bushes and a fence near Officer Gibson in order to watch defendant and his companions. Defendant appeared to be dividing something. Another man acted as a lookout for police. According to Officer Smith, defendant approached a car. Defendant later walked toward the driveway of the house where the drugs were found but Smith lost sight of him before he reached the house. Smith next observed defendant appear to place something in his mouth. He approached other cars but did not make any transactions.
On cross-examination, Officer Smith stated that he did not know how many suites there were at the residence and he offered no testimony to exclude the possibility that an occupant of the structure possessed the drugs.
Police Scientific Examiner Tracy Kramer testified that she examined and analyzed the rocks recovered in this matter. The rocks tested positive for cocaine and had a total weight of 11.84 grams.
Defendant was subsequently convicted of all charges and sentenced to two years incarceration on Counts One and Three, and six months incarceration on Count Two. All counts were ordered to run concurrently. Defendant now appeals and assigns a single error for our review.
Defendant's assignment of error states:
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO OBJECT TO IRRELEVANT, PREJUDICIAL EVIDENCE, TO HEARSAY EVIDENCE, AND TO IMPROPER CLOSING ARGUMENTS, AND FAILED TO ADEQUATELY PREPARE AND PRESENT A DEFENSE.
Within this assignment of error, defendant asserts that his trial counsel was ineffective in this matter.
In evaluating defendant's claims we note that in establishing a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington (1986), 466 U.S. 668, 687. Accord State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. The Strickland court also cautioned courts examining the issue that:
 [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134(1982). * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'
Id., at 689. See, also, State v. Frazier (1991), 61 Ohio St.3d 247, 253. Debatable trial tactics do not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49.
Defendant asserts that his trial counsel was ineffective for his failure to object repeated references to prior bad acts evidence — specifically, appellant's prior contacts with law enforcement. He also complains that his trial counsel failed to object to hearsay evidence that defendant's associates were drug boys.
As an initial matter, we note that generally, under Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity to commit the crime in question. However, "other acts" evidence is admissible, if "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Bey (1999), 85 Ohio St.3d 487, 490, citing State v. Lowe (1994), 69 Ohio St.3d 527, 530.
In this matter, the state presented evidence that the officers had previously met defendant and patted him down following complaints of drug activity. This evidence was therefore offered to demonstrate that the police made a correct identification in this instance. The jury was not instructed, however, that this testimony was admissible only to show appellant's motive, intent, plan, or absence of mistake. State v. Fisher (November 24, 1999), Cuyahoga App. No. 75222, unreported. An error therefore occurred in this connection. Cf. State v. Smith (1990),49 Ohio St.3d 137, 139-40.
With regard to counsel's failure to object to the hearsay evidence regarding whether defendant's friends were drug boys, defendant's trial counsel clearly relied upon this evidence to support his own claims that the wrong person had been charged herein and that someone who knew defendant actually possessed the drugs. Defendant's counsel clearly engaged in a sound tactical decision to allow this evidence to be admitted without objection.
Defendant also complains that his trial counsel did not prepare a defense in this matter. This claim is wholly without support in the record. Defendant's trial counsel argued that the police were mistaken in identifying defendant, that they did not have a good vantage point for observing, and that the events to which they testified did not, in any event, constitute commission of the offenses charged herein.
Finally, defendant complains that his trial counsel was ineffective for failing to object to the following portion of the state's closing argument:
 Mr. Luskin is a very good lawyer. He's an experienced trial lawyer, has tried many cases and he always gives his defendant that he's defending a good defense. One of the things that Mr. Luskin is good at is misleading a jury. That's part of his skill. Talk to a jury, pick up on little insignificant details in the overall picture and try to have a jury focus on that rather than follow the facts in this case, focus on that, focus on what he says in closing argument, which is his interpretation of the testimony. Well, the State of Ohio asks you to rely on your own collective memory of what the testimony was and what the facts are in this case.
(Tr. 351).
In analyzing this assignment of error, we must determine whether, absent the improper questions or remarks, the jury still would have found the defendant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 266. State v. Vrona (1988), 47 Ohio App.3d 145.
In State v. Smith (1984), 14 Ohio St.3d 13, 14, the Supreme Court stated as follows:
 "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. Moreover, the code provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1), and "* * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. * * *" EC 7-37." (Citations omitted.)
In Smith, the prosecuting attorney referred to defense evidence as "lies," "garbage," "garbage lies," "[a] smoke screen," and "a well conceived and well rehearsed lie." The Court rejected claims that the error was harmless in light of the evidence of guilt and the court's instruction that closing arguments were not evidence, explaining that improper insinuations and assertions of personal knowledge by the prosecution are likely to carry great weight against the accused. Smith, supra, at 15, citing Berger v. United States (1935), 295 U.S. 78, 88,79 L.Ed. 1314, 55 S.Ct. 629.
Likewise, in State v. Keenan (1993), 66 Ohio St.3d 402, 405-406, the Supreme Court considered an analogous matter and stated:
 The prosecutor argued to the jury during the guilt phase that defense counsel's conduct of the case showed that they were "not looking at this objectively. They are paid to do that. They are paid to get him off the hook." A defense objection was overruled. In our view, this comment imputed insincerity to defense counsel, thus suggesting that they believed Keenan guilty. It was therefore improper. Balske, Prosecutorial Misconduct During Closing Argument (1986), 37 Mercer L.Rev. 1033, 1055-1056; Gershman, Prosecutorial Misconduct (1985) 10-29, Section 10.4(b). Such comment is forbidden because it is both irrelevant and prejudicial.
Finally, we note that in State v. Smith (1998), 130 Ohio App.3d 360, the court condemned the prosecuting attorney's comments which suggested to the jury that defense counsel had intentionally deceived the jury by engaging in misrepresentations. Relying upon its previous decision in State v. Hart (1994), 94 Ohio App.3d 665, 673-674, the Smith Court stated:
 [a] prosecutor may argue and argue ardently that the evidence does not support the conclusion postulated by defense counsel. A prosecutor may not, however, denigrate the role of defense counsel by injecting his personal frustration with defense tactics * * *. The prosecutor was not entitled to employ * * * argument to denigrate the role of defense counsel and to insinuate to the jury that [the defendant] and his counsel, by exercising their right to suggest what conclusions may or may not have been drawn from the evidence found at trial, were seeking to hide the truth.
Here, the prosecuting attorney did mislead the jury and gave an argument which was beyond the evidence presented at trial and which denigrated the defense counsel. We can therefore conclude that prosecutorial misconduct occurred and that the remark went unchecked. As to whether it can be said that but for the alleged error the result of the trial would clearly have been different, we again note that an error occurred in connection with Officer Gibson's statement that defendant had previously been stopped in response to complaints of drug activities. Further, after thoroughly evaluating the record, we cannot say that absent the improper questions or remarks, the jury still would have found the defendant guilty. In light of the fact that we have determined that unchecked prosecutorial misconduct occurred and that this error was prejudicial, we need not reach the further question of defense counsel's effectiveness in relation thereto.
Defendant was denied a fair trial herein. The judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., CONCURS, ANNE L. KILBANE, J., CONCURS IN JUDGMENT ONLY
 ___________________ ANN DYKE, JUDGE
[1] Officer Shoulders was permitted to offer extensive hearsay regarding the observations of Smith and Gibson over the repeated objects of defendant's trial counsel.