Defendant-appellant, Robert E. Hill, appeals his conviction for possession of cocaine and having a weapon while under disability.
 I. Facts
On November 15, 1996, Officer Ruebusch heard shots fired at Fifteenth and Republic, a high-crime, high-drug area in Cincinnati. As he began to investigate the cause of the gunfire, Officer Ruebusch heard, over the radio, that a burglary had just occurred in the area and that a shot had been fired. After assisting in apprehending the burglar, Officer Ruebusch returned to the area to question witnesses. In particular, Officer Ruebusch spoke with the victim of the burglary, identified first as Mr. Sheriff, but later determined to be Robert Hill. According to Hill, the burglary was interrupted when Hill and his girlfriend arrived at their apartment. Hill explained that he observed the burglary in progress as he was driving up to his apartment in a 1988 Toyota Camry.
While listening to Hill's account of the burglary, Officer Ruebusch testified, he bent down by the car Hill stated he was driving in order to view the apartment from the same perspective Hill had when he approached the building. Officer Ruebusch testified that, as he bent down by the car, he observed the barrel of a gun protruding from under the car seat. Upon seeing the gun, Officer Ruebusch testified, he immediately thought that Hill could have fired the gunshot, so he handcuffed Hill and another officer secured the gun. Officer Halusek, who secured the gun, discovered that the gun was fully-loaded. He also found several loose rounds on the seats of the car and another fully loaded clip in the glove box.
While the gun was being secured, Officer Ruebusch conducted a pat-down search of Hill, during which he discovered money and keys to the Toyota. After the pat-down search, the police seized several items found in the car. From the glove box, they took a card indicating that Hill had insurance for a 1988 Toyota Camry. And, in the trunk, they discovered a digital scale and baggies of crack cocaine that had been placed in a child's car seat and in a Nike jacket. A registration check revealed that the car was owned by a woman, not by Hill.
After finding the gun and the drugs, Officer Ruebusch testified, he took Hill to the station, advised him of his Miranda rights, and received an acknowledgement that Hill understood his rights. Officer Ruebusch testified that Hill admitted that the gun was his, and that, as to the cocaine, Hill stated, "You got me; it's mine." Similarly, Officer Halusek testified that Hill stated, "You got me. The stuff is mine. The gun and the drugs are mine." But Hill did not commit his statement to writing.
Hill was charged with possession of cocaine, a firearm specification, and having a weapon under disability. Hill filed a motion to suppress evidence, which was denied. A jury trial was held on May 27, 1997, but it ended in a mistrial before the case was submitted to the jury. The case was thereafter reassigned. A second jury trial was held between November 3 and 6, 1997. Hill was found guilty of the drug and weapon-under-disability charges. Hill has timely appealed his conviction, asserting thirteen assignments of error, none of which is well taken.
 II. Assignments of Error A. Search and Seizure
In his second assignment of error, Hill alleges that the trial court erred by overruling his motion to suppress the gun and the drugs seized from the Toyota Camry in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution. Specifically, Hill argues that the fact that a crime was committed and shots were fired was not, in itself, sufficient to warrant the court's conclusion that there was probable cause to arrest Hill and search a car with which he had some "nebulous connection."
Although we note that neither the defense nor the prosecution addressed the issue of standing, it is well established that, in order to assert a Fourth Amendment violation, Hill first 'had to establish that he had standing to challenge the search and seizure. To establish standing, a defendant bears the burden of proving that he had a legitimate expectation of privacy in the area searched.[1] At the outset, we acknowledge that the record contains conflicting evidence on the issue of standing. While Hill's evidence points toward a lack of standing, there is support in the prosecution's evidence for the existence of standing. Under either view of the evidence, Hill's second assignment of error is not well taken.
The trial court could have reasonably concluded that Hill had an interest in the property seized because the officers testified that Hill claimed ownership of the gun and the drugs. But, as to the issue of whether Hill had an interest in the area searched, the trial court was confronted with diverse accounts as to whether Hill had an interest in the car. Essentially, the state put forth evidence to show that, even though the car was not registered to Hill, Hill had an interest in the car because the car was insured under his name. In contrast, Hill appeared to disclaim an interest in the car on the basis of the evidence demonstrating that an unknown female, and not Hill, owned the car. If Hill's position is accepted as true, then, absent an interest the car, Hill lacked standing to challenge the search and seizure, and his second assignment of error must be overruled. However, if we accept the import of the state's position and conclude that Hill had standing to challenge the admission of the drugs and the gun, we are still not convinced that the search of the car was improper and that the evidence seized by the police officers should have been suppressed, because the police had probable cause to search the car. It is well established that when the police have probable cause to believe that evidence of a crime is in a car, they may search any part of the car where the evidence may be concealed.[2] And where officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may conceal the object of the search.[3] In the case sub judice, Officer Ruebusch testified that he treated Hill as a crime victim up until the moment that he looked into the car and spotted a part of the gun in plain view. Once he saw the gun, he thought that Hill might have actually fired one of the gunshots he had heard. Accordingly, we hold that it was reasonable for the trial court to determine that, after observing the gun in plain view, the police had probable cause to believe that Hill was involved either with the burglary or with an instrumentality of the crime. As a result, Hill's second assignment of error is overruled.
 B. Prosecutorial Misconduct
In his first assignment of error, Hill contends that the trial court erred by convicting him after the prosecuting attorney's closing argument had deprived him of his constitutional right to a fair trial. Hill complains of five instances of misconduct occurring during closing argument, none of which gave rise to prejudicial misconduct.
Under Ohio law, the test for whether prosecutorial misconduct may serve as the basis for reversing a conviction is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected substantial rights of the accused.[4] The conduct must deprive the defendant of a fair trial to be grounds for a meritorious appeal.[5] When determining whether the questioned remarks were prejudicial, an appellate court must consider all relevant factors, including the nature of the remarks, whether an objection was made by counsel, whether any corrective instructions were given, and the strength of the evidence against the defendant.[6] Consequently, closing argument must be reviewed in its entirety to determine whether the remarks were prejudicial.[7]
The first alleged instance of prosecutorial misconduct relates to the prosecutor's comment, "Folks, there is no evidence favorable towards Robert E. Hill in this case. None." Defense counsel immediately objected to this statement, but the court overruled the objection. Hill alleges that the comment was impermissible because it concerned matters outside the record. We disagree.
Our adversarial system permits prosecutors to argue fervently for a conviction, and courts have consistently recognized that the prosecution is entitled to a wide degree of latitude and freedom of expression during summation in discussing what the evidence has shown and what reasonable inferences may be drawn therefrom.[8] Here, the prosecutor was entitled to comment on the evidence by noting the relative strength of his case and the weakness of the defense.[9] Thus, we hold that the prosecutor's remark was not improper.
The second instance of prosecutorial misconduct identified by Hill relates to the following comment: "Let me tell you something. It's uncontroverted. You know, I didn't hear any evidence from an independent forensic scientist and they're out there." Hill argues that the prosecutor's comment had the effect of shifting the burden of proof to him to prove that the substance found in the car was not crack cocaine. We, however, cannot say that the comment had the effect of shifting the burden of proof because the prosecution was merely responding to defense counsel's closing argument attacking the state's drug-testing techniques. Moreover, the court instructed the jury on the appropriate allocation of the burden of proof. Therefore, the second challenged comment was not improper.
Third, Hill contends that he was prejudiced when the prosecutor argued facts not in evidence at closing argument. Hill alleges that, despite the lack of any supporting evidence, the prosecutor improperly remarked that the car belonged to him. Hill also objects to the prosecutor's remark that he was a "drug dealer."
It is a prosecutor's duty in closing argument to avoid efforts to obtain a conviction by going beyond the evidence that has been presented to the jury.[10] However, we are unable to conclude that the prosecutor's remarks in this case were based upon material outside the record. There is evidence in the record suggesting that the car was in Hill's possession. Hill admitted to driving up to his apartment in the Toyota, and an insurance card issued in his name was found in the car. Additionally, a stipulation was entered that Hill "was under indictment for and [had] plead[ed] guilty to the offense of aggravating trafficking of a drug of abuse * * * prior to November 15, 1996 and the defendant Robert E. Hill had not been relieved from such disability." Thus, based on the record, we cannot say that the prosecutor argued facts not in evidence.
Fourth, Hill complains of the prosecutor's denigration of defense counsel during closing argument. The prosecutor stated that "[defense counsel] is going to try to put smoke up in the air." Defense counsel objected to this remark and the court sustained the objection, instructing the jury to disregard the prosecutor's comment. Later, the prosecutor also stated that defense counsel was trying to "create smoke" by taking away the evidence relating to the testing performed on the cocaine. No objection was made relating to this comment.
Although prosecutors are given wide latitude in closing arguments, we have consistently held that the latitude afforded the prosecution does not extend so far as to permit the prosecution to denigrate the role of defense counsel.[11] Here, the prosecutor's comments suggested that defense counsel had intentionally sought to deceive the jury, and, therefore, they were clearly improper.
But we can not reverse the judgment unless the improper comments prejudicially affected Hill's substantial rights.[12] Although only the first comment was objected to at the trial, we are required to review the closing argument in its entirety to determine if the prosecutor's comments were prejudicial.[13] After reviewing the comments in light of the entire closing argument, we can not conclude that they were prejudicial. The trial court immediately sustained defense counsel's objection to the first comment and instructed the jury to disregard the comment. And, at the close of evidence, the trial court admonished the jury that when the jurors were instructed to disregard comments during trial, they were to act as though they had never heard them. Moreover, there was ample evidence to support the jury's verdicts. As a result, we are not convinced that the improper comments prejudicially affected Hill's substantial rights.
The final instance of prosecutorial misconduct cited by Hill relates to the prosecutor's statement that the officers who testified were experts in drugs and drug arrests. Defense counsel objected and the trial court overruled the objection. Although the police officers were not deemed experts by the court, the evidence reflects that the officers were in fact experienced in drugs and drug arrests. Moreover, we cannot say that the comment prejudicially affected Hill when the jury was properly instructed about witness and expert-witness testimony.
In sum, viewing the closing argument in its entirety, we conclude that even where the prosecutor's statements were improper, the resulting error was legally inconsequential. Based on the nature of the remarks, the corrective instructions given, and the strength of the evidence presented against Hill, we cannot say that, but for the improper comments made by the prosecution, the verdicts would have been otherwise. Accordingly, Hill's first assignment of error is overruled.
 C. Jury Instructions
In his fifth assignment of error, Hill contends that the trial court erred to his prejudice by giving the jury a supplemental definition of possession after it asked for a clarification of the jury instructions. Specifically, Hill alleges that he was denied due process of law because the court gave, over objection, a different definition of possession that was partially inconsistent with its original jury instruction.
In its general charge to the jury, the trial court instructed the jury on the definition of possession in R.C. 2925.01(K). R.C. 2925.01(K) states:
 "Possess" or "possession" means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
During deliberations, the jury requested a clarification of the definition of possession. The trial court discussed the jury's request with counsel. Over defense counsel's objection, the court gave an additional definition of possession taken from the Ohio Jury Instructions:
 Possession of cocaine is an essential element of the offense of Possession of Cocaine. Possession of a firearm is an essential element of the offense of Having Weapons While Under Disability.
 Possession is a voluntary act if the possessor knowingly procured or received the cocaine in the First Count or firearm in the Second Count, or was aware of his control thereof for a sufficient period of time to have ended his possession.
 A person has possession when he knows that he has the object on or about his person or property, or places it where it is accessible to his use or direction and he has the ability to direct or control its use.[14]
It is within the trial court's discretion whether to answer a jury's questions posed during deliberations and whether to clarify its instructions.[15] A trial court need not give a party's requested instructions verbatim, but may use its own language to communicate legal principles.[16] And where the jury instructions are sufficiently clear to permit the jury to understand the pertinent law, they are not erroneous or prejudicial to a party.[17]
Hill contends that the Ohio Jury Instructions (OJI) should serve as a guide and not the "bible." Although we agree with this proposition,[18] we believe that the supplemental instruction given by the trial court was proper. The second paragraph of the supplemental instruction given by the court is codified in R.C. 2901.21. R.C. 2901.21(C)(1) states that "[p]ossession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession." Because R.C.2901.21 relates to requirements necessary for criminal liability and because criminal liability was at issue in this case, we conclude that this portion of the instruction conveyed appropriate legal principles to the jury.
Hill also maintains that the third paragraph of the OJI instruction prejudiced him because it was contradictory to the first jury instruction. Specifically, Hill contends that the jury was first instructed that possession could not be inferred solely from mere access to the substance or thing, but that the second instruction allowed for precisely that inference. We disagree. After reviewing the instructions, we conclude that the court's instructions provided the correct statement of law in this case.
Here, the jury was presented with the question of whether Hill had possession of the gun found in the Toyota, Camry. Specifically, the defense argued that there was a question of Hill's access to and control over the gun. Both the initial instruction and the supplemental instruction taken from OJI highlight the importance of having control over the firearm to find possession. Therefore, we conclude that the court's supplemental instruction was not contradictory. Because the instructions were not erroneous or prejudicial, we hold that the trial court did not err. Accordingly, Hill's fifth assignment of error is overruled.
 D. Howard Charge
In his seventh assignment of error, Hill contends that the trial court erred by giving, over objection, an incorrectHoward charge when the jury indicated that it was deadlocked, and that the trial court erred by denying his motion for mistrial.
During deliberations, the jury asked the court for a clarification on the possession charge. The court, after consulting with counsel, called the jury into the courtroom, gave them a supplemental instruction, and read verbatim the charge approved in State v. Howard.[19] After giving the Howard
charge, the court stated:
 Folks, as I say, it is desirable a decision be reached in this case and I would urge you to go back and to at least discuss the issues and the evidence pertaining to those issues with a view to trying to arrive at some sort of verdict in each of the two issues.
Hill argues now, as he did at trial, that the addition to theHoward charge of the language urging "some sort of verdict" was improper and coercive. We do not agree.
In State v. Howard,[20] the Supreme Court of Ohio set out the appropriate supplemental instruction to be given to juries deadlocked on the question of conviction or acquittal. The primary purpose of the Howard charge is to alleviate the potentially coercive impact on a jury when the court advises that a decision must be reached.[21] This court has held that where there is a slight variation in the reading of the Howard
charge, the variation is permissible where the substance of the charge remains unchanged.[22] But where there is a substantial variation in the reading of the charge, the substantial variation constitutes a reversible error due to its coercive effect.[23]
In the case sub judice, we need not address whether there was a minor or substantial variation in the actual reading of theHoward charge, because the trial court correctly read the entire Howard charge. Rather, the problem presented here is whether the court's additional remarks, given after the Howard
charge, created a substantial deviation from the Howard charge so as to impermissibly coerce the jury. Although a trial court creates a risk of coercion when it supplements the Howard
charge, we hold that the instant comments, which did not change the impetus of the Howard charge, were not coercive. Accordingly, we overrule Hill's seventh assignment of error.
 E. Manifest Weight and Sufficiency of Evidence, and Motion for Acquittal
In his ninth, tenth, and eleventh assignments of error, which Hill argues together, he alleges that the judgment was based on insufficient evidence, that it was against the manifest weight of the evidence, and that the trial court erred by denying his Crim.R. 29 motions for acquittal. These assignments of error are meritless.
To reverse a conviction for insufficient evidence, a reviewing court must be persuaded, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[24] Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.[25]
To reverse on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[26]
Hill argues that no witness saw him in possession of the gun or the drugs; that no one saw him operate the car in which the gun and the drugs were found; that there was no fingerprint evidence offered to indicate that he had been in the car, and no drug residue found on his person or clothing; and that none of the admissions attributed to him were recorded or reduced to writing.
After reviewing the entire record, we conclude that there was sufficient evidence presented to permit the jury to conclude beyond a reasonable doubt that Hill was in possession of the gun and the drugs. Further, we cannot say that the jury lost its way and created a manifest miscarriage of justice. It is not for this court to say which witnesses should be believed. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[27] According to Officer Ruebusch, Hill stated that he observed a burglary in progress from a 1988 Toyota Camry and later admitted that the gun and the drugs seized by the police were his. The police also found an insurance card issued to Hill when the gun and the drugs were retrieved from the car. And the drug analyst identified the drugs as cocaine. Therefore, we conclude that the weight and sufficiency of the evidence supported his weapon and drug convictions.
Hill also argues that the trial court erred in denying his Crim.R. 29 motions for acquittal. Under Crim.R. 29(A), the trial court shall order the entry of a judgment of acquittal, for one or more charged offenses, only if "the evidence is insufficient to sustain a conviction of such offense or offenses." In its consideration of a Crim.R. 29 motion, the court must construe all evidence in a light most favorable to the state.[28] A trial court may not order an entry of judgment of acquittal under Crim.R. 29(A) "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[29]
Hill was charged with possession of a controlled substance in violation of R.C. 2925.11(A), which states, "No person shall knowingly obtain, possess or use a controlled substance." And, in a second count, Hill was charged with having a weapon while under disability in violation of R.C. 2923.13(A)(3), which states:
 Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse, or has been adjudged a delinquent child for the commission of an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
The evidence presented by the prosecution was such that reasonable minds could have concluded that Hill did knowingly possess the cocaine and the gun. Hill stipulated that he was under a disability, and there was ample testimony and evidence presented to permit a rational trier of fact to conclude that the state had proved beyond a reasonable doubt that Hill knowingly possessed the gun and the drugs. Officer Ruebusch testified that Hill admitted that he was driving the Toyota Camry. After searching the car, the officers testified that they found (1) an insurance card issued to Hill for the Toyota; (2) baggies of cocaine; and (3) a fully loaded weapon. Additionally, the officers testified that Hill admitted at the stationhouse that the gun and the drugs were his.
Viewing the evidence in the light most favorable to the state, the trial court did not err in denying Hill's Crim.R. 29 motion for acquittal at the conclusion of the state's evidence. Reasonable minds could have differed as to whether all the elements of the charged offenses had been proven, thus precluding the entry of a judgment of acquittal pursuant to Crim.R. 29(A). Therefore, we overrule Hill's eleventh assignment of error.
 F. Sentencing
In his twelfth assignment of error, Hill challenges his sentence under the Eighth Amendment and Ohio law. Specifically, Hill maintains that while the sentence of ten years for the principal offense on count one was mandatory under R.C.2953.08(A)(1)(a), the trial court erred by imposing an additional term of ten years under R.C. 2925.11(C)(4)(f). We agree.
Hill was found guilty of possession of cocaine under R.C.2925.11(A), and he was found to be a major drug offender. Pursuant to R.C. 2925.11(C)(4)(f), "the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the revised code." Under R.C. 2929.14(D)(3)(b), a court may impose additional prison terms of one to ten years only if the court makes both findings set forth in divisions (D)(2)(b)(i) and (ii) of R.C. 2929.14. Under R.C. 2929.14(D)(2)(b)(i), the court must determine whether an unsupplemented term would be inadequate to punish the offender and to protect the public because the applicable factors under R.C. 2929.12 indicate that there is a likelihood of recidivism. Second, the court must find that, under R.C. 2929.14(D)(2)(b)(ii), an unsupplemented term would be demeaning to the seriousness of the offense because one or more of the factors under R.C. 2929.12 are present and outweigh the factors indicating that the offender's conduct is less serious than conduct normally constituting the offense.
At the sentencing hearing, the trial court made the findings that recidivism was likely; that the basic maximum term on the drug charge was insufficient to punish Hill and to protect the public; and that the simple maximum term would demean the seriousness of the offense. Based on Hill's prior record, including juvenile delinquencies, his pattern of drug and alcohol abuse, his lack of remorse, and his disability to carry a firearm when he committed the offense, it is evident that the court's recidivism findings, pursuant to R.C.2929.12(D)(1),(2),(4), and (5), were well justified. Therefore, we conclude that the trial court properly made the first finding of fact required in R.C. 2929.14(D)(2)(b)(i).
However, we hold that the record is devoid of any facts to warrant the second finding pursuant to R.C. 2914.14(D)(2)(b)(ii), which provides that the defendant's conduct must be more serious than conduct normally constituting the case under R.C. 2929.12(B). In order to determine whether Hill's conduct was more serious than conduct normally constituting the offense, the court had to consider eight enumerated items under R.C. 2929.12(B). After reviewing the record and the presentence-investigation report, we conclude that there was no evidence satisfying the R.C. 2929.12
criteria: (1) there was no victim in this case; (2) Hill did not hold public office; (3) Hill was not an elected official; (4) Hill was not in a position to prevent the offense or bring others to justice; (5) there was no evidence that Hill was committing the offense for hire or as part of an organized criminal activity; and (6) there was no evidence that he was motivated by prejudice when committing the crime. The irony in this case is that Hill was treated as the victim of a burglary until the police discovered drugs and a gun in the car he was driving. Therefore, based on the record, we conclude that there is no clear and convincing evidence to justify the imposition of an additional term as part of the sentence for count one.
R.C. 2953.08(G)(1) provides that this court may "increase, reduce, or otherwise modify a sentence that is appealed[.]" We have clearly and convincingly found that Hill's additional sentence is not supported by the record. Accordingly, we order that the sentence on count one be modified to a term of ten years, which is the basic maximum sentence for this offense.
 G. Other Assignments
Hill asserts, in his third assignment of error, that the trial court erred by denying his motion to dismiss the indictment prior to the second trial, thereby violating the double-jeopardy protections afforded by the Fifth andFourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. This assignment is not well taken.
The Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense.[30] Generally, where the defense seeks and obtains a mistrial, there is no bar to retrial.[31] But where the prosecutor makes a deliberate attempt to provoke a mistrial, jeopardy attaches.[32]
Hill argues that the prosecutor goaded the defense into requesting a mistrial because the prosecutor insisted on using new, previously undiscovered evidence at the first trial. After reviewing the record, we disagree. There is no indication that the prosecution intended to goad the defense into moving for a mistrial. The prosecutor did not present the new evidence to the jury without forewarning, but instead immediately made defense counsel and the court aware of the new piece of evidence. Accordingly, we overrule Hill's third assignment of error.
In his fourth assignment of error, Hill contends that the trial court erred in denying his motion for mistrial after the jury heard inadmissible statements that were attributed to him. Specifically, Hill contends that when the jury heard that he had refused to name his supplier, and that he had made statements about the ownership of the car and about why he did not want to give a written statement, the resulting prejudice was not effectively dispelled by a curative instruction from the court. We do not agree.
The trial court did not abuse its discretion in not declaring a mistrial under these circumstances. The statements were not prejudicial to Hill, nor were they material to his case-in-chief. Moreover, the trial court's instruction to the jury to disregard them corrected any potential for their misuse during deliberations. Accordingly, this assignment of error is overruled.
Hill maintains, in his sixth assignment of error, that the trial court erred by denying his motion to suppress the statements he made to the police officers after his arrest because they had been tainted by violations of the Fourth,Fifth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 14, Article I of the Ohio Constitution. We find that this argument is meritless.
Based on our prior determination that the police had appropriate grounds to search the Toyota, to seize the evidence found in it, and to arrest Hill, we hold that the statements made after he was given Miranda warnings were admissible. As a result, the trial court properly admitted Hill's stationhouse statements, and his sixth assignment of error is overruled.
In his eighth assignment of error, Hill argues that the trial court denied him his due process right to a fair trial by admitting hearsay evidence, over objection. Specifically, Hill contends that Exhibits 7 and 8, which were drug reports prepared by the drug analyst for the Hamilton County Coroner's office, were inadmissible under Evid.R. 803(5), because they were not used to refresh the analyst's memory and, therefore, improperly enhanced the witness's testimony. We disagree.
Evid.R. 803(5) precludes, as evidence, a memorandum or record concerning a matter about which a witness once had knowledge to enable him to testify fully and accurately, unless the writing is read into evidence or offered as an exhibit by the adverse party. Based on the testimonial evidence, we fail to see how this provision of the evidence rules is applicable in this case. We have found one instance in the record where the analyst asked to refer to her notes, but there is no indication that such notes were actually Exhibits 7 and 8. Moreover, the record does not otherwise demonstrate that the drug analyst had insufficient recollection to enable her to testify fully. It further appears that the exhibits may have been separately admissible under R.C. 2925.51. Accordingly, because we hold that Evid.R. 803(5) is inapplicable to this case, we overrule Hill's eighth assignment of error.
Hill's final assignment of error is that the cumulative and incremental effect of the errors committed at his trial deprived him of a fundamentally fair trial and requires a reversal of his conviction. This assignment of error is also meritless. Because we have overruled eleven of Hill's assignments of error and modified only his sentence in response to the twelfth, there is no cumulative error to recognize in this case.[33]
 III. CONCLUSION
We overrule Hill's first though eleventh assignments of error and his thirteenth assignment of error. We modify the trial court's sentence on count one as a result of our ruling on the twelfth assignment of error, and affirm the trial court's judgment subject to that one modification.
Judgment affirmed as modified.
GORMAN and PAINTER, JJ., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.
[1] See Rawlings v. Kentucky (1980), 448 U.S. 98, 100 S.Ct. 2556;United States v. Salvucci (1980), 448 U.S. 83, 100 S.Ct. 2547;Rakas v. Illinois (1978), 439 U.S. 128, 99 S.Ct. 421; State v.Dennis (1997), 79 Ohio St.3d 421, 683 N.E.2d 1096.
[2] United States v. Ross (1982), 456 U.S. 798, 102 S.Ct. 2157.
[3] Id.
[4] State v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293,300; State v. Smith (1984), 14 Ohio St.3d 13, 14-15,470 N.E.2d 883, 885-886.
[5] State v. Keenan (1993), 66 Ohio St.3d 402, 613 N.E.2d 203.
[6] State v. Maurer (1984), 15 Ohio St.3d 239, 266,473 N.E.2d 768, 792.
[7] State v. Maurer, supra.
[8] State v. Stephens (1970), 24 Ohio St.2d 76, 82,263 N.E.2d 773, 777; State v. Hart (1994), 94 Ohio App.3d 665, 671,641 N.E.2d 755, 759.
[9] State v. Smith (Oct. 16, 1998), Hamilton App. No. C-970349, unreported.
[10] See State v. Smith, supra, at 14, 470 N.E.2d at 885.
[11] See State v. Keenan, supra, at 406, 613 N.E.2d at 207; Statev. Smith, supra, at 14, 470 N.E.2d at 885.
[12] State v. Lott, supra.
[13] See State v. Keenan, supra, at 410, 613 N.E.2d at 209; Statev. Moritz (1980), 63 Ohio St.2d 150, 157, 407 N.E.2d 1268,1273.
[14] 4 Ohio Jury Instructions (1997), 64, Section 409.50(1), (2), and (3).
[15] See State v. Carter (1995), 72 Ohio St.3d 545, 651 N.E.2d 965, paragraph one of the syllabus; State v. Kersey (Dec. 19, 1997), Hamilton App. No. C-960975, unreported.
[16] See State v. Cole (Jan. 22, 1997), Hamilton App. No. C-950900, unreported.
[17] See id.
[18] See State v. Napier (1995), 105 Ohio App.3d 713, 720-21,664 N.E.2d 1330, 1335.
[19] (1989), 42 Ohio St.3d 18, 537 N.E.2d 188.
[20] Id., paragraph two of the syllabus.
[21] Id. at 22, 537 N.E.2d at 192.
[22] See State v. Dickens (May 8, 1998), Hamilton App. No. C-960365, unreported.
[23] State v. Andricks (1996), 111 Ohio App.3d 93, 675 N.E.2d 872.
[24] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[25] State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546.
[26] See id. at 387, 678 N.E.2d at 547.
[27] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[28] State v. Evans (1992), 63 Ohio St.3d 231, 248,586 N.E.2d 1042, 1056.
[29] State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[30] See United States v. Dinitz (1976), 424 U.S. 600, 606,96 S.Ct. 1075, 1079.
[31] Oregon v. Kennedy (1982), 456 U.S. 667, 102 S.Ct. 2083.
[32] See id. at 675-76, 102 S.Ct. at 2089; State v. Fields (Apr. 26, 1989), Hamilton App. No. C-880188, unreported.
[33] See State v. Davis (1991), 62 Ohio St.3d 326, 348,581 N.E.2d 1362, 1380; State v. Kendall (June 25, 1997), Hamilton App. No. C-960506, unreported.