JOURNAL ENTRY and OPINION
{¶ 1} Appellant Lorenzo Lett appeals his conviction and assigns the following errors for our review:
 {¶ 2} "I. Appellant was denied a fair trial as a result of the prosecutor's statements during closing argument which constituted prosecutorial misconduct."
 {¶ 3} "II. Because the evidence in support of appellant's trafficking, [drug] possession and possession of criminal tools charges was insufficient, the trial court erred when it denied appellant's Crim.R.29 motion."
 {¶ 4} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 5} As a result of a controlled buy executed by the City of Cleveland Police Department Vice Unit, the Cuyahoga County Grand Jury indicted Lett on two counts of drug trafficking, one count each for possession of drugs, and one count of possession of criminal tools. On September 29, 2003, Lett waived his right to a jury and proceeded to have a bench trial.
 {¶ 6} At trial, Detective Arneil Rose testified on July 9, 2003 he was part of a controlled drug buy detail. The detail includes a "spotter," a "buy person," a "confidential reliable informant," (CRI) and the "takedown unit." Rose stated the "buy person" conveys the CRI to the target location. The CRI is given marked currency to effect a drug transaction. The "spotter" observes from approximately fifty feet everything the CRI does from the moment he or she enters the target location. If the transaction takes place, the "spotter" notifies the "takedown" unit whose job is to immediately arrive on the scene to arrest the parties.
 {¶ 7} According to Rose, on July 19, 2003, while acting as the "spotter" he observed three males and a female loitering in the vicinity of East 131st Street and Marston in the City of Cleveland He notified the "buy person" to convey the CRI to the target location. Once there, the CRI engaged in conversation with a male on a bike. The two walked northbound approximately ten feet away from the others and a hand-to-hand transaction took place. The CRI gave the male on the bike the police department's prerecorded buy money and the male gave the CRI a small object, which was later identified as cocaine. The CRI then gave the prearranged signal the drug transaction had taken place. Rose immediately notified the "takedown" unit to approach the location and detain the individuals. Rose stated he saw Lett observe the entire transaction.
 {¶ 8} While the "takedown" unit was approaching the target location, Rose observed the male on the bike return to the group and make a hand-to-hand exchange with Lett. Rose stated from his vantage point he could not see clearly what was exchanged, but he notified the "takedown" unit, who later recovered the prerecorded buy money from Lett.
 {¶ 9} Detective Arthur Littell testified he was a takedown officer in the controlled drug buy. According to Littell, he received notification the transaction had taken place and the description of the parties. He immediately went to the scene and saw Lett walking down the street accompanied by two other males and a female. Littell stopped the zone car in front of them. Upon searching Lett, he found the prerecorded $20 bill in his rear pants pocket, but found no drugs.
 {¶ 10} On July 19, 2003, co-defendant Vincent Clemmons testified he was walking out of an alley, where he had been smoking crack cocaine, when a woman he knew told him he had a customer for drugs. He saw the customer get out of a car and approached him. The customer asked him for $20 worth of drugs and he sold it to him. Thereafter, he went over to Lett who was standing nearby and asked him if he had change for a $20 bill. Lett said he did. Upon handing the money to Lett, the police arrived and arrested them.
 {¶ 11} Clemmons stated he did not know Lett, but only asked him for change because he wanted to buy some food. When asked why he did not wait to get change after buying his food, he stated if he encountered someone selling drugs, he would be tempted to spend the entire $20 on drugs.
 {¶ 12} Clemmons further testified he pled guilty to selling drugs because it was he who had sold the drugs to the CRI and it was unfair for Lett, an innocent bystander to be convicted. Finally, Clemmons denied standing or talking with him before the drug transaction took place.
 {¶ 13} Lett's parole officer, Janel Tilghman, testified Lett has been reporting to her since leaving jail, had complied with all the conditions of his pardon, and has not tested positive for drugs.
 {¶ 14} Lett took the stand in his own defense. According to Lett, he was walking along the street when he encountered a woman he recognized from the neighborhood. While he was talking with the woman, Clemmons approached on his bicycle, spoke with the woman, and then asked him if he had change for a $20 bill. He told him he did and when he took the money to make change for Clemmons, the police arrived and arrested them.
 {¶ 15} He stated he had previously seen Clemmons around the neighborhood, but did not know him personally. He stated he did not see Clemmons that day until he came up and asked him to make change. Further, he denied seeing Clemmons sell drugs to the CRI.
 {¶ 16} Lett admitted on cross examination he had sold drugs approximately twenty times and had been convicted for drug trafficking four times and drug possession twice. He stated there were never any co-defendants on the drug trafficking convictions.
 {¶ 17} The court found Lett guilty. The trial court sentenced him to eight months on each count to be served concurrently and to three years of post-release control. Lett now appeals.
 {¶ 18} Lett contends the prosecutor's improper statements during closing arguments denied him a fair trial. We disagree.
 {¶ 19} In determining whether prosecutorial conduct denied the defendant a fair trial, our query is whether the prosecution's remarks were improper and, if so, whether they prejudicially affected a substantial right of the accused.[1] The Constitution does not guarantee "an error-free, perfect trial."[2] The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor."[3]
 {¶ 20} Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial.[4]
Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning.[5] An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant.[6]
 {¶ 21} In the instant case, the prosecutor stated "this is a known drug offender. He admits on his own that he's dealt drugs in excess of 20 times, and only been caught for four of those times in the past ten years * * *. He is very well experienced of drug trafficking, and did reflect so in his testimony."[7]
The prosecutor's statement, though improper, was supported by Lett's own testimony. Lett testified he had sold drugs in excess of twenty times and had only been caught four times.[8]
 {¶ 22} The effect of an improper statement must be considered in the context of the entire trial in determining prejudice.[9] An isolated incident in an otherwise properly tried case cannot serve as a basis for reversal.[10] The prosecutor's improper statement in this case was an isolated incident. Having reviewed the entire trial transcript, we are unable to find other misconduct that would indicate a pattern of indifference to the due process rights of appellant. On the contrary, the parties and their counsel, for the most part, conducted themselves with the utmost decorum and professionalism. Viewed in this context, we see no prejudicial error despite the impropriety of the prosecutor's comment. Accordingly, Lett's first assigned error is not well taken and is overruled.
 {¶ 23} In the second assigned error, Lett argues there was insufficient evidence to support his conviction. We disagree.
 {¶ 24} A challenge to the sufficiency of evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[11] On review for legal sufficiency, the appellate court's function is to examine evidence admitted at trial and determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[12] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[13]
 {¶ 25} Lett was convicted of drug trafficking, drug possession and possession of criminal tools. R.C. 2925.03, which defines the offense of drug trafficking, provides that:
 {¶ 26} "(A) No person shall knowingly * * *:
 {¶ 27} "(1) Sell or offer to sell a controlled substance;
 {¶ 28} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 29} Additionally, R.C. 2923.24(A) provides that "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 30} Here, the State's evidence, if believed, demonstrated that Officer Rose, 1) observed four individuals including Lett and Clemmons standing together and talking to each other, 2) observed Clemmons leave the group, approach the CRI and engage in a hand-to-hand exchange, 3) observed Lett watching the exchange between Clemmons and the CRI, 4) observed Clemmons immediately return and hand something to Lett, and 5) upon searching Lett, found a prerecorded $20 bill in his rear pants pocket.
 {¶ 31} Viewing this evidence in a light most favorable to the prosecution, it is apparent that a rational fact finder could have concluded beyond a reasonable doubt that Lett engaged in drug trafficking. Moreover, a rational factfinder could have concluded from this evidence that Lett used co-defendant Clemmons to facilitate the drug deal.
 {¶ 32} We are unpersuaded by Lett's assertion the evidence against him was insufficient, because no drugs were found on his person.
 {¶ 33} First, it has become common practice that most individuals engaged in drug trafficking do not want the evidence on their person at anytime, preferring to find a drug user to make the transaction and bring the money back to him or her. Clemmons testified he was addicted to drugs and was smoking crack in an alley before selling drugs to the CRI. Here, Clemmons would be a perfect candidate for these transactions.
 {¶ 34} Second, Lett maintains the reason the police found the prerecorded $20 bill on his person is because he was in the process of making change for Clemmons. However, a typical request for change involves a simultaneous exchange. Here, Clemmons handed over a $20 bill to a person he denies knowing, and then waited for change. This is implausible.
 {¶ 35} Third, Clemmons testified he asked Lett for change because he wanted to buy food. However, he could have waited to get change when he bought his food. Clemmons claimed he did not want to be tempted to spend the entire $20 on drugs before getting food. Again this is implausible.
 {¶ 36} We conclude there was sufficient evidence presented at trial to establish the requisite elements of drug trafficking, drug possession and possession of criminal tools. Accordingly, Lett's second assigned error is not well taken and is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Gallagher, J., Concur.
[1] State v. Jones (2000), 90 Ohio St.3d 403, 420, citingState v. Smith (1984), 14 Ohio St.3d 13, 14.
[2] State v. Green (2000), 90 Ohio St.3d 373, quoting UnitedStates v. Hasting (1983), 461 U.S. 499, 508.
[3] State v. Green (2000), 90 Ohio St.3d 352, 373, quotingSmith v. Phillips (1982), 455 U.S. 209, 219.
[4] State v. Mann (1993), 93 Ohio App.3d 301, 312.
[5] State v. Carter (2000), 89 Ohio St.3d 593, 2000 Ohio 172; citing Donnelly v. DeChristoforo (1974), 416 U.S. 637, 647,94 S.Ct. 1868, 1873, 40 L.Ed.2d 431, 439.
[6] State v. Smith, 14 Ohio St.3d 13 at 14.
[7] Tr. at 94-95.
[8] Tr. at 83.
[9] State v. Keenan (1993), 66 Ohio St.3d 402, citingDonnelly v. DeChristoforo (1974), 416 U.S. 637, 643-645,94 S.Ct. 1868, 40 L.Ed.2d 431.
[10] Id.
[11] State v. Thompkins (1997), 78 Ohio St.3d 380.
[12] Id.; State v. Fryer (1993), 90 Ohio App.3d 37.
[13] Id at 43.