DECISION
{¶ 1} Defendant-appellant Darrell Washington appeals his conviction for trafficking in marijuana. He assigns a number of errors ranging from the beginning of jury selection to closing arguments. But after a thorough examination of the record, we affirm.
 I. A Surprise Drug Deal and a Trial {¶ 2} In May 2004, Officers Melissa Cummins and Jonathan Gordon were working undercover in the Over-the-Rhine neighborhood of Cincinnati. They were driving around looking for drug activity, when Washington unexpectedly approached their vehicle. Washington approached their car so quickly that Officer Cummins had to hide some police gear under her seat. Washington was yelling, "Hey, hey, hey," and he asked Officer Cummins if she needed some marijuana. She replied that she wanted to buy some, and Washington started to get into the back of the vehicle. Officer Cummins stopped him, and he took off his hat to show her his dreadlocks. "I'm the real Rasta," Washington boasted, saying that he had what they needed.
 {¶ 3} Officer Gordon then asked Washington if he had the marijuana on him. When Washington responded affirmatively, Officer Gordon let Washington into the car. Both officers then got out of the car and arrested Washington. They searched him, but found no marijuana, no plastic baggies, no counterfeit substances, and no significant amount of money. Basically, the officers found no physical evidence that tended to show that Washington was trafficking in marijuana.
 {¶ 4} The state charged Washington with trafficking, a violation of R.C. 2925.03(A)(1). When jury selection began, the state used three of its peremptory challenges to strike African-Americans from the jury. After excusing Alexia Chambers, Washington's counsel objected, relying onBatson v. Kentucky.[1] The trial court held a sidebar conference and asked the state to give a race-neutral explanation for the challenge. The state pointed to Chambers's close associations with people who smoked marijuana and her young age. We note that the state had not asked any of the previous potential jurors about whether they had any associations with people who smoked marijuana. But the trial court accepted the state's explanation and overruled Washington's Batson challenge.
 {¶ 5} During her opening statement, the prosecutor mentioned that Washington had agreed to help the officers with drug investigations but had later reneged on that agreement. Both officers repeated this information during their testimony. Washington's trial counsel objected, but the trial court allowed the statements into evidence.
 {¶ 6} Also during opening statement, the prosecutor stated that Washington had agreed to help the officers because he did not want to "go back to prison." Despite an instruction to avoid the subject, Officer Gordon repeated the statement during his testimony. The trial court immediately struck the statement, informing the jurors that they could not consider it.
 {¶ 7} Washington's trial counsel moved for a mistrial based on the challenged statements, but the trial court overruled the motion. Washington also moved for an acquittal, which the trial court similarly denied. Washington rested without presenting any defense.
 {¶ 8} During closing argument, the state again made comments that Washington now questions. The prosecutor stated, "If it's a drug deal where he's facilitating, basically saying [`]I got what you need, then I'll take you where you want to go,['] he's not going to have those things on him. * * * Once he makes the offer to sell, that is the case right there."
 {¶ 9} The trial court instructed the jury on the relevant law, and the jury found Washington guilty. The trial court then sentenced Washington to 11 months' imprisonment — one month short of the maximum term.
 {¶ 10} On appeal, Washington assigns seven errors: (1) the state should not have been permitted to exercise its peremptory challenges to exclude African-Americans from the jury; (2) the jury should never have heard that Washington had reneged on his agreement; (3) the trial court should have granted his motion for a mistrial; (4) the trial court should have granted his motion for an acquittal because there was insufficient evidence to sustain a conviction; (5) the conviction was against the manifest weight of the evidence; (6) the prosecutor's statements during closing arguments were improper and prejudiced Washington; and (7) he was denied the effective assistance of counsel.
 II. The Batson Challenge {¶ 11} In his first assignment, Washington argues that his Batson
challenge should have been granted because the state's race-neutral explanation was merely pretextual. We agree that the circumstances surrounding Chambers's questioning were somewhat suspicious, but we hold that the trial court's determination was not in error.
 {¶ 12} In Batson, the Supreme Court held that purposeful discrimination in the use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution.[2]
 {¶ 13} A Batson analysis occurs in three steps: (1) the opponent of the peremptory strike must make a prima facie case of racial discrimination; (2) the party making the peremptory challenge must present a racially neutral explanation for the challenge; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination.[3] The burden of persuasion is on the opponent of the strike.[4]
 {¶ 14} To establish a prima facie case of purposeful discrimination, a defendant must demonstrate (1) that members of a cognizable racial group were peremptorily challenged, and (2) that the facts and any other relevant circumstances raise an inference that the prosecutor used the challenges to exclude jurors because of their race.[5] Once this has been established, the burden shifts to the state to provide a race-neutral explanation for the striking of a particular juror.[6] We will not reverse a trial court's finding of no discriminatory intent unless the finding was clearly erroneous.[7]
 {¶ 15} Washington is an African-American man. The state used peremptory challenges on prospective jurors Purdie, Harris, and Chambers, all African-Americans. Washington established a prima facie case of purposeful discrimination. But Washington did not challenge Purdie's or Harris's striking.
 {¶ 16} The state's race-neutral explanation for striking Chambers was that Chambers had stated that she knew several people who used marijuana, that she was young, and that young people "tend to be a little less for guilt when it comes to marijuana usage." Chambers had stated that she could be a fair and impartial juror, but the trial court accepted the state's reasons and excused Chambers.
 {¶ 17} Part of the problem here is that the state did not ask all the previous jurors individually how they felt about marijuana usage and whether they knew anyone who used marijuana. But the prosecutor did ask all the jurors if any of them had a problem sitting on a marijuana case. And one of the jurors stated that he did not think that marijuana was a very serious drug. The state excused that juror. After dismissing Chambers, the state also asked several of the potential jurors the same kinds of questions.
 {¶ 18} We are persuaded that the state satisfactorily provided race-neutral explanations for striking Chambers, and we therefore overrule Washington's first assignment of error.
 III. Other-Acts Evidence {¶ 19} In his second assignment, Washington argues that the trial court erred in allowing the jury to hear evidence that Washington had promised to help with drug investigations but later failed to do so.
 {¶ 20} Washington now claims that the information was irrelevant to his arrest for trafficking, that it was inadmissible other-acts evidence, and that any probative value was outweighed by the danger of prejudice. We agree with his first two arguments, but conclude that the error was harmless.
 {¶ 21} Evidence that is not relevant is not admissible.[8] We fail to see how Washington's initial promise to help with other drug investigations, followed by his failure to fulfill that promise, bore any relevance to his guilt for trafficking.
 {¶ 22} Further, evidence of other acts is not admissible to prove the character of a person.[9] It is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[10] Nothing even remotely like these circumstances was present here. The promise occurred after the incident and only served to show that Washington broke an oral agreement.
 {¶ 23} But we cannot say that this prejudiced the jury in any way. This was not a central point of the state's case, and it was completely irrelevant to Washington's guilt or innocence. Any error was harmless. The admissible evidence showed that Washington was guilty beyond a reasonable doubt of trafficking, so we overrule his second assignment of error.
 IV. Motion for a Mistrial {¶ 24} In his third assignment, Washington argues that the trial court erred in overruling his motion for a mistrial after evidence of his criminal record was presented to the jury.
 {¶ 25} A ruling on a motion for a mistrial rests in the sound discretion of the trial court, and we will not disturb the decision absent an abuse of that discretion.[11] An abuse of discretion is a ruling unsupported by sound reasoning.
 {¶ 26} In her opening statement, the prosecutor stated that Washington had said, "I cannot go back to prison." And Officer Gordon testified, "[Washington] said he couldn't go back to jail." Both of these statements were improper. And it is difficult to believe that the prosecutor did not know they were inadmissible. While knowingly attempting to elicit inadmissible evidence would be an ethical problem,[12] perhaps this was just an inadvertent slip.
 {¶ 27} Washington's counsel promptly objected to Officer Gordon's testimony, and the trial court instructed the jury, "Ladies and gentlemen, any reference to jail, at this point, you are ordered to strike. Don't pay any attention to it. It's not to be used in any way in your decision in this case." While it is difficult to "unring the bell" once comments are made, the record in this case renders the error harmless. But in a closer case, we would not hesitate to reverse based on this comment alone.
 {¶ 28} The prosecutor noted during a recess that she had instructed Officer Gordon not to discuss Washington's prior record, and it is clear from the record that the state did not purposely elicit the statement about going "back to jail."
 {¶ 29} The trial court's instruction ameliorated any error that occurred; the court did not abuse its discretion in denying Washington's motion for a mistrial. We therefore overrule Washington's third assignment of error.
 V. Sufficiency and Weight of the Evidence {¶ 30} In his fourth and fifth assignments of error, Washington contends that his conviction was against the sufficiency and the manifest weight of the evidence, and he further argues that the trial court should have granted his motion for an acquittal. Not so.
 {¶ 31} In reviewing a record for sufficiency, we must determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution.[13]
 {¶ 32} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[14] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[15] "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."[16] And a new trial should be granted on the weight of the evidence only in exceptional cases.[17]
 {¶ 33} Washington claims that because he did not have any drug paraphernalia on him at the time of his arrest, he should not have been convicted.
 {¶ 34} Washington was charged with trafficking, which prohibits the knowing sale or offer to sell a controlled substance.[18] A person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."[19]
 {¶ 35} Washington now points to the officers' relative inexperience and their comfort level with their environment to show that the state failed to prove Washington's guilt beyond a reasonable doubt. But the state presented enough evidence for a guilty verdict.
 {¶ 36} The officers found no marijuana or other physical evidence that Washington had been trafficking in marijuana. But physical evidence is not necessary to prove beyond a reasonable doubt a defendant's guilt of trafficking.[20] Officer Gordon testified that some drug transactions would not necessarily involve physical evidence. He stated that sometimes the seller took the buyer somewhere, then went elsewhere to get the drugs. In other words, not every drug transaction involved a simple exchange of money for drugs.
 {¶ 37} The evidence showed that Washington approached the officers, offered to sell them marijuana, said that he was the "real Rasta" and had "what you need," and said that he had marijuana on him. The officers believed that Washington had the drugs on him, so they arrested him. Viewing the evidence in the light most favorable to the state, reasonable minds could certainly have found all the necessary elements of the crime. And considering all the circumstances — especially Washington's adamant offer to sell marijuana to the officers — we cannot say that the jury lost its way or created a manifest miscarriage of justice in finding Washington guilty.
 {¶ 38} The conviction was not against the sufficiency or the weight of the evidence, and the trial court properly denied Washington's motion for an acquittal. We therefore overrule Washington's fourth and fifth assignments of error.
 VI. Improper Closing Remarks {¶ 39} In his sixth assignment, Washington claims that he was denied a fair trial because of the prosecutor's improper closing statements.
 {¶ 40} If a prosecutor's remark was improper, we must determine whether it was so prejudicial that it denied the defendant a fair trial. And we must examine the comment in the context of the entire trial, and in the context of the closing argument as a whole.[21]
 {¶ 41} The first comment that Washington complains of occurred when the prosecutor stated, "If it's a drug deal where he's facilitating, basically saying [`]I got what you need, then I'll take you where you want to go,['] he's not going to have any [evidence] on him."
 {¶ 42} This was obviously a conditional statement and was not improper. Further, it was reasonable to assume that Washington may have been involved in a situation where he was going to take the officers somewhere to get marijuana, even though there was no testimony that Washington intended to do so. And even if the statement had been improper, we fail to see how this denied Washington a fair trial.
 {¶ 43} Washington also complains about the prosecutor's statement "Once he makes the offer to sell, that is the case right there." But the trial court told the jury that closing arguments were not to be considered as evidence. And it properly instructed the jury on the appropriate law.
 {¶ 44} We therefore overrule Washington's sixth assignment of error.
 VII. Ineffective Assistance {¶ 45} In his seventh and final assignment, Washington argues that he was denied the effective assistance of counsel. He cites two basic areas where his counsel was deficient: (1) failure to object to statements concerning his promise to help the police with drug investigations, and (2) failure to object to the state's closing argument.
 {¶ 46} To establish ineffective assistance, a defendant must prove that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) the substandard performance actually prejudiced the defendant.[22] Trial counsel's performance will not be deemed ineffective unless counsel's representation fell below an objective standard of reasonableness,[23] and there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.[24]
 {¶ 47} The record shows that Washington's trial counsel made numerous objections throughout the trial and that counsel conducted solid cross-examinations of both officers. The only time that trial counsel did not challenge objectionable statements was during the state's opening and closing remarks — both times when the state was given broad latitude. We cannot say that Washington's trial counsel's performance fell below an objective standard of reasonableness. And even if it had, Washington has not shown how these minor errors actually prejudiced him.
 {¶ 48} We therefore overrule Washington's seventh assignment of error. Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] (1986), 476 U.S. 79, 106 S.Ct. 1712.
[2] Id.
[3] Id.; State v. Herring, 94 Ohio St.3d 246, 2002-Ohio-796,762 N.E.2d 940.
[4] Id.
[5] State v. Hill, 73 Ohio St.3d 433, 1995-Ohio-287, 653 N.E.2d 271.
[6] Id.
[7] Id.
[8] Evid.R. 402.
[9] Evid.R. 404(B).
[10] Id.
[11] State v. Iacona, 93 Ohio St.3d 83, 2001-Ohio-1292,752 N.E.2d 937.
[12] See DR 7-106(C)(1).
[13] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[14] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[15] State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[16] Section 3(B)(3), Article IV, Ohio Constitution.
[17] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
[18] R.C. 2925.03(A)(1).
[19] R.C. 2901.22.
[20] See, e.g., State v. Lett, 8th Dist. No. 83833, 2004-Ohio-5218;State v. Campa, 1st Dist. No. C-010254, 2002-Ohio-1932.
[21] State v. Hart (1994), 94 Ohio App.3d 665, 641 N.E.2d 755.
[22] Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052.
[23] Id.
[24] State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.